UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GERALDINE WALIZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:16-cv-00434-RLY-DML |
| | ) |
| NANCY A. BERRYHILL,[1] Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on
## Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C.

§ 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its

appropriate disposition. As addressed below, the Magistrate Judge recommends

that the District Judge REVERSE AND REMAND the decision of the Commissioner

of the Social Security Administration that plaintiff Geraldine Walizer is not

disabled.

## Introduction

Ms. Walizer applied in July 2012 for Disability Insurance Benefits (DIB) and

Supplemental Security Income disability benefits (SSI) under Titles II and XVI,

respectively, of the Social Security Act, alleging that she has been disabled since

---

[1]    Nancy A. Berryhill is now the Acting Commissioner of the Social Security
Administration.  As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn
W. Colvin as the defendant.

September 1, 2011.  Acting for the Commissioner of the Social Security

Administration following a hearing held July 24, 2014, administrative law judge

Mary Ann Poulose issued a decision on October 3, 2014, finding that Ms. Walizer is

not disabled.  The Appeals Council denied review of the ALJ's decision on January

11, 2016, rendering the ALJ's decision for the Commissioner final.  Ms. Walizer

timely filed this civil action under 42 U.S.C. § 405(g) for review of the

Commissioner's decision.

Ms. Walizer contends the Commissioner's decision must be reversed and

remanded because (1) the ALJ should have evaluated Ms. Walizer's receipt of

Medicaid, (2) the ALJ did not include in the RFC limitations that were supported by

the record, and (3) the ALJ's credibility analysis is flawed.

### Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 423(d)(1)(A).[2] Ms. Walizer is disabled if her impairments are of such

---

[2]     Two programs of disability benefits are available under the Social Security
Act:  DIB under Title II for persons who have achieved insured status through
employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability
benefits under Title XVI for uninsured individuals who meet income and resources
criteria, 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and
regulations promulgated by the Social Security Administration are those applicable
to DIB benefits.  For SSI benefits, materially identical provisions appear in Title
XVI and at 20 C.F.R. § 416.901 *et seq.*

severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her

impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the

fourth step, if the claimant has the RFC to perform her past relevant work, then she

is not disabled.  The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on her age, work experience, and education

(which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one

through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets

that burden, then the Commissioner has the burden at step five to show that work

exists in significant numbers in the national economy that the claimant can

perform, given her age, education, work experience, and functional capacity.  20

C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is

deferential.  A court must affirm if no error of law occurred and if the findings are

supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th

Cir. 2001).  Substantial evidence means evidence that a reasonable person would

accept as adequate to support a conclusion.  *Id.*  The standard demands more than a

scintilla of evidentiary support, but does not demand a preponderance of the

evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for

her decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,*

357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence

in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I.     The ALJ's Sequential Findings

Ms. Walizer was born in November 1950, was 60 years old at the alleged onset of her disability in September 2011, and was 63 years old at the time of the ALJ's decision. Ms. Walizer has a history of steady work. She worked for many years as a general merchandise manager in a grocery store and spent years as a general manager at a hotel. After her alleged disability onset date, she worked at two different jobs for short periods of time but was not able to perform the work. She worked three or four days on a baby food assembly line, but the work required repetitive flipping with her hands that she could not perform. She worked about two weeks as a cashier, but the repetitive motion required by that job was also more than she was physically capable of doing. (R. 34-35).

At step one, the ALJ determined that the work Ms. Walizer had performed after her onset date was not substantial gainful activity. At step two, she found Ms. Walizer has the following severe impairments: osteoarthritis, degenerative disc disease of the lumbar spine, and degenerative disease of the hip and left shoulder. She found at step three that Ms. Walizer's impairments do not meet or medically equal any listing. The ALJ's RFC limits Ms. Walizer to light work "except frequent,

5

but not constant use of the upper extremities for handling and fingering, with only

occasional balancing, climbing, stooping, kneeling, crouching, and crawling." (R.

21). With this RFC and based on the testimony of a vocational expert, the ALJ

decided that Ms. Walizer is capable of performing her past relevant work as a hotel

manager or as a general merchandise manager, as that work is generally performed

in the economy. Accordingly, the ALJ decided at step four that Ms. Walizer is not

disabled and did not reach step five.

## II.     Ms. Walizer's Assertions of Error

Ms. Walizer raises numerous errors. It is not necessary for the court to reach

all of them. As explained below, the court finds that the ALJ's decision regarding

Ms. Walizer's handling and fingering limitations is not supported by substantial

evidence, and this error requires remand.

### A. Ms. Walizer cannot perform her past relevant work unless she is capable of handling and fingering on a frequent basis.

The ALJ's RFC limits Ms. Walizer's use of her upper extremities "for

handling and fingering" to "frequently." Under Social Security regulations, to do

something *frequently* requires a person to be capable of performing the function

from 1/3 to 2/3 of every work day. A person who is capable of performing a

particular function only up to 1/3 of the work day can only *occasionally* perform the

task. *See* glossary within Social Security Ruling 83-10, "Titles II and XVI:

Determining Capability to Do Other Work – the Medical –Vocational Rules of

Appendix 2," available at https://www.ssa.gov/OP_Home/rulings/di/02/SSR83-10-di-

02.html.

In response to the ALJ's question whether a person who has only "occasional use of the non-dominant upper extremity both for handling and fingering"[3] could perform Ms. Walizer's past work, the vocational expert stated that an occasional limitation precluded all past work. (R. 61). The VE also testified that if Ms. Walizer were not capable of performing her past relevant work, she would be disabled at step five because of the grids. (*Id.*). Thus, the determination that Ms. Walizer can handle and finger frequently, rather than only occasionally, made the difference between whether Ms. Walizer is disabled or not.

The court finds that the ALJ's decision that Ms. Walizer can handle/finger frequently as opposed to a lesser level is *ipse dixit* and is not supported by substantial evidence.

**B. Ms. Walizer showed that her hands were swollen and deformed.**

During the hearing, which was held by videoconference with the ALJ in Chicago and Ms. Walizer in Lafeyette, Indiana, Ms. Walizer held up her hands to a camera to show them to the ALJ. She described them as swollen and very puffy, which the ALJ did not contradict. Ms. Walizer showed that her fingers are starting to turn at different angles—to turn inward—which the ALJ did not contradict. She stated that her hands are sore and tend to cramp. (R. 46-47). Ms. Walizer is right-handed and she has the most trouble with that hand. Ms. Walizer testified that she

---

[3]    It is not clear to the court why the ALJ focused on the non-dominant upper extremity. Ms. Walizer testified that her handling and fingering difficulties were more pronounced in her right, dominant hand. The medical evidence also indicated that the fingers on Ms. Walizer's right hand suffered curvature.

has a hard time turning a car steering wheel with that hand and uses her left hand. (R. 42). She cannot lift a gallon of milk with her right hand, but can do that with her left hand. She testified that "everything is just left-handed anymore." (*Id.*) She stated that her middle finger on her right hand does not work "really at all," which makes it difficult to hold and to grasp things with that hand. (R. 43).

Medical records reference deformities of Ms. Walizer's hands. As the ALJ noted, a medical record dated June 15, 2012, states that Ms. Walizer has severe nodules on the medial and distal joints of her fingers and slight curvature of her right hand. (R. 22, R. 255). At an examination on January 31, 2013, the doctor noted that Ms. Walizer has deformities at the joints in both hands. (R. 22, R. 300).

### C. The ALJ's determination Ms. Walizer can do "frequent" handling and fingering but not some lesser amount is unexplained.

The ALJ stated that based on these two pieces of medical evidence (the 6/1512 and 1/31/13 records), she limited Ms. Walizer to "frequent but not constant use of the upper extremities for handling and fingering." It appears that the only, and entire, rationale for the ALJ's decision to pick frequent (as opposed to occasional) is an *ipse dixit* downgrade by one step—from constant to frequent—from an opinion by a state agency reviewing physician who found Ms. Walizer had no limitations with her handling and fingering. (R. 290). But why only one step downward from constant and not two steps down to occasional? There's no explanation for the choice. And there's no medical opinion that the choice is sound from a medical perspective. But there is a substantial amount of testimonial evidence that "frequent" is wholly inconsistent with Ms. Walizer's actual day-to-day

8

abilities. She does not have the use of both her hands frequently, and indeed, can barely use her right, dominant hand at all.

The opinion by the state agency reviewing physician (who never examined Ms. Walizer) about Ms. Walizer's handling and fingering is based on a one-time consultative physical examination on August 13, 2012, conducted at the request of the Social Security Administration. The one-time examining doctor wrote that Ms. Walizer's "grip strength" and "fine" and "gross" motor are "wnl," or "within normal limits." (R. 288, 260). That finding was cited by the reviewing doctor to support his opinion that Ms. Walizer does not suffer from any handling or fingering limitations. The state agency reviewer did not mention, however, that the physical examination had revealed that Ms. Walizer's hands were swollen and that her fingers turn at different angles. *See* R. 257 (objective findings portion of consultative examination report). Nor did the state agency reviewing doctor acknowledge the medical records documenting the severity of the arthritis in Ms. Walizer's hands. He didn't mention the record from June 2012 noting the severe nodules at the medial and distal joints and the curvature of the right hand. And he did not know about the record from late January 2013, by a different doctor, who noted deformities in the joints of both of Ms. Walizer's hands. (R. 300). The reviewing doctor's failure to acknowledge medical data pertinent to Ms. Walizer's handling and fingering makes his opinion less reliable.

The ALJ did not provide any reasoned basis for doubting Ms. Walizer's testimony about the substantial difficulties she has using her hands, particularly

9

her right hand. The reasons she gave for doubting Ms. Walizer's credibility in general do not withstand scrutiny with respect to the effects of the arthritis in her hands. The court will address each of the ALJ's grounds for her negative credibility assessment and explain why none withstands scrutiny.

First, although the ALJ claimed the "overall" objective evidence is inconsistent with Ms. Walizer's allegations of disability, that comment cannot rationally be applied to Ms. Walizer's handling difficulties. The objective evidence cited by the ALJ is the doctor's statement from the one-time consultative physical examination that Ms. Walizer's grip strength and "fine and gross motor" were within normal limits. (R. 23). But the ALJ herself decided these one-time exam findings were insufficiently reliable for determining Ms. Walizer's handling/fingering limitations. Recall that the state agency reviewing doctor had opined that the exam findings of grip strength and fine and gross motor "within normal limits" meant Ms. Walizer had *no* manipulative limitations. The ALJ rejected that opinion. It is inconsistent in this case for her to then decide that Ms. Walizer's statements about her difficulties with fingering and handling should not be believed based on the same opinion the ALJ rejected. Further, the ALJ's description of the results of the consultative physical examination was mistaken. She asserted that the consultative physical examination "failed to note any swelling in the upper extremities." (R. 23). That's not so. As noted earlier, the exam report expressly notes the existence of swelling in the hands. (R. 257).

Second, the results of certain blood work does not, as the ALJ claimed, mean Ms. Walizer is "less than fully credible." The ALJ stressed that a blood test "proved negative of ANA factor and Rh factor" and showed Ms. Walizer had a normal sedentary rate (R. 23). That's true, but there is no evidence the results of this blood work are inconsistent with the level of severity of arthritis in Ms. Walizer's hands or inconsistent with Ms. Walizer's statements about handling and fingering difficulties due to arthritis in her hands.[4]

Third, the ALJ's denunciation of Ms. Walizer's credibility based on a supposed inconsistency revealed by her hearing testimony falters because there is no inconsistency. At the hearing, Ms. Walizer testified her medication does not help, but an older medical record reported that Ms. Walizer had some relief from medication. The ALJ concluded that this hearing testimony was an inconsistent statement "relevant to the issue of disability." (R. 23). The ALJ never asked Ms. Walizer to explain what she meant when she said the arthritis medication is not helping, and maybe she meant that it hasn't cured her arthritis. There simply is nothing inconsistent with testifying in July 2014 that arthritis medication is not "helping" ("I don't think [the arthritis medicine is helping.] R. 45), and stating a year earlier that she got "some relief" in the pain level in her shoulder from two

---

[4]    Rheumatoid arthritis is apparently notoriously difficult to diagnose based on blood tests, and it is common medical knowledge that a negative rheumatoid factor test does not mean a person does not have rheumatoid arthritis. Rheumatoid arthritis "cannot be reliability diagnosed by a blood test." *See http://rheuminfo.com/diseases/rheumatoid-arthritis/diagnosing-rheumatoid-arthritis.* Furthermore, the ALJ did not doubt the medical documentation of Ms. Walizer's arthritis.

medications that were prescribed at that time, one of which (Ultram) is a narcotic-like pain reliever.[5] Both statements logically can co-exist, and neither suggests Ms. Walizer gave exaggerated and unreliable statements about the difficulties she has using her swollen, curved hands that are marked by deformities in the hand joints.

The court is thus left without a logical path between the evidence and the ALJ's decision that Ms. Walizer, who has deformed and swollen hands, can nevertheless engage in "frequent" handling and fingering. For this reason, remand is necessary.

**D. The ALJ may address other issues on remand.**

As noted, Ms. Walizer raised many other errors, which the court finds unnecessary to reach. The court notes, however, that it has rejected in other cases brought by Ms. Walizer's counsel the argument that a claimant's receipt of Medicaid benefits means she has been adjudicated as disabled for purposes of that government program. *E.g., Bowman v. Colvin,* 2016 WL 6790797 at *5-6 (S.D. Ind. Oct. 26, 2016). The court rejects the argument here too. If, on remand, Ms. Walizer has evidence from Indiana Medicaid adjudicating her as disabled and explaining the basis for such an adjudication, she may seek to supplement the administrative record with that documentation.

---

[5]     Ultram, also known as tramadol, is a narcotic-like pain reliever used to treat moderate to severe pain. *See* https://www.drugs.com/ultram.html.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.


Dated: February 3, 2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record by email through the court's ECF system